IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| PHILOMENA ROTH, | : | |
|     Plaintiff, | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| SUNRISE SENIOR LIVING MANAGEMENT, INC., | : | NO. 2:11-cv-4567 |
|     Defendant. | : | |

<u>MEMORANDUM ORDER</u>

AND NOW, this 8th day of March, 2012, upon consideration of Plaintiff's Motion to Compel (Doc. No. 13) and Defendant's opposition thereto (Doc. No. 16), it is hereby ORDERED that the Motion to Compel (Doc. No. 13) is GRANTED IN PART as follows:

1. On or before March 19, 2012, Defendant shall produce its medical records for the other resident involved in Plaintiff's September 12, 2009 incident, with all personal and identifying information redacted as specified in 45 C.F.R § 164.514(b)(2)(i). These medical records shall be used solely for the purposes of this litigation.

2. On or before March 19, 2012, Defendant shall provide the Court, and solely the Court, with Defendant's incident report for the September 12, 2009 altercation involving Plaintiff and another resident. In its submission, Defendant shall state with specificity the basis for its attorney-client privilege, attorney work product, and peer review privilege objections to producing the report. The Court will review the incident report *in camera* and then determine whether production is warranted.

This matter concerns injuries that Plaintiff Philomena Roth claims to have sustained in an altercation with another resident during her stay at Defendant's "assisted living" or "personal care" facility in Lower Makefield, Pennsylvania, on September 12, 2009. In part, Plaintiff's Complaint alleges that Defendant was negligent in monitoring and supervising the other resident

involved in the altercation. (See Doc. No. 1). Defendant refuses to produce (1) its medical records for the other resident and (2) its incident report for the altercation. Plaintiff has moved to compel production of these documents, and for the reasons explained herein, we grant-in-part Plaintiff's motion.

The Federal Rules contemplate a broad scope of discovery in civil litigation. See Fed. R. Civ. P. 26(b)(1) ("Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense. . . .Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence."); Pacitti v. Macy's, 193 F.3d 766, 777-78 (3d Cir. 1999) ("It is well recognized that the federal rules allow broad and liberal discovery.") (citations omitted); 8 Charles Alan Wright et al., Fed. Prac. & Proc. Civ. § 2007 (3d ed. 2011) (noting that courts have repeatedly recognized the broad scope of permissible discovery and that "Rule 26(b) allows great freedom in discovery."). Of course, "discovery, like all matters of procedure, has ultimate and necessary boundaries." Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351 (1978). We exercise our considerable discretion to set those boundaries here. See Marroquin-Manriquez v. I.N.S., 699 F.2d 129, 134 (3d Cir. 1983) (affirming that "[i]t is well established that the scope and conduct of discovery are within the sound discretion of the trial court.") (citation omitted).

With respect to the medical records of the non-party resident, Defendant first argues that it cannot release the records because doing so would violate both federal and state privacy laws, namely the Health Insurance Portability and Accountability Act of 1996 ("HIPAA") and 55 Pa. Code § 2600.17. Defendant is mistaken. First, HIPAA permits disclosure of protected health information pursuant to a court order. 45 C.F.R § 164.512(e)(1)(i). We have now issued just

2

such an order.

Second, and more fundamentally, HIPAA restricts the release only of "protected health information," which is defined as "individually identifiable health information." See 45 C.F.R. §§ 164.502(a), 160.103; 42 U.S.C. § 1320d.  Once medical records have been appropriately redacted and de-identified, patient privacy concerns dissipate and HIPAA poses no obstacle to the production of the redacted records.  See, e.g., Miller v. Allstate Fire & Cas. Ins. Co., Civil No. 07-260, 2009 WL 700142, at *4 (W.D. Pa. Mar. 17, 2009) (noting that plaintiff's "willingness to accept redacted documents, which would cease to be individually identifiable" would "obviate any of the patient privacy interests potentially at stake."); In re Zyprexa Prods. Liab. Litig., 254 F.R.D. 50, 56 (E.D.N.Y. 2008) (holding that de-identified medical records "are not privileged and are thus discoverable pursuant to Rule 26(b) of the Federal Rules of Civil Procedure."); Caines v. Addiction Research & Treatment Corp., No. 06Civ.3399, 2007 WL 895140, at *1 (S.D.N.Y. Mar. 20, 2007) (observing that "[i]t is a routine matter in litigation for courts to require production. . .of records that reflect medical treatment of non-parties, sometimes with the identities of the patients redacted" and doing so "is fully consistent with the privacy provisions of HIPAA.").  Here, Plaintiff seeks redacted, de-identified medical records, so HIPAA's disclosure restrictions (and the privacy interests underlying them) are of no moment.

Likewise, Pennsylvania state privacy laws do not preclude disclosure of the redacted medical records in this case.  Under 55 Pa. Code § 2600.17, resident records must be kept confidential absent certain exceptions.  One of those exceptions is "if a court orders disclosure." Id.  We have ordered disclosure in this matter, so Section 2600.17 does not prevent Defendant from producing the medical records at issue here.  Additionally, to the extent that Pennsylvania

privacy laws conflict with HIPAA's provisions regarding the disclosure of *de-identified* health information, HIPAA preempts such laws.  See In re Zyprexa, 254 F.R.D. at 54 (concluding that "de-identified health information is not protected under HIPAA, and that, to the extent state privilege laws offer protection to de-identified medical records, HIPAA preempts those laws.").

Defendant also argues that "[p]laintiff's counsel has failed to offer any explanation as to how the medical records of another resident, who is not party to or subject of the claims made within the Complaint, would reasonably lead to admissible evidence, which is a threshold requirement of discovery." (Doc. No. 16 ¶ 2). Not so. Plaintiff specifically asserts that the resident's medical records "are relevant to whether defendant breached the standard of care in monitoring and supervising the other resident, and whether any breaches caused or contributed to the altercation and plaintiff's injuries." (Doc. No. 13 ¶ 3). We agree with Plaintiff that the records may be relevant to both the breach and causation elements of Plaintiff's negligence claim. In addition, the medical records reflect what Defendant knew, or should have known, about the resident who allegedly injured Plaintiff, e.g., whether the resident had a history of violence or other troublesome behavior. Of course, Defendant's knowledge of such things goes directly to the foreseeability of the resident's altercation with Plaintiff, which in turn goes to the duty element of Plaintiff's negligence claim. See Pyeritz v. Pennsylvania, 32 A.3d 687, 692-93 (Pa. 2011) (noting that duty depends in part on "the nature and foreseeability of the risk in question."). As such, we have no doubt that the medical records at issue here are highly relevant to Plaintiff's negligent monitoring and supervision claim.

Next, Defendant argues that redacting the medical records would impose an undue burden under Federal Rule of Civil Procedure 26. According to Rule 26, we must limit discovery if "the

4

burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(2)(C)(iii). Here, the benefit dwarfs the burden. As discussed *supra*, at 4, the medical records of the resident who supposedly attacked the Plaintiff go to the heart of Plaintiff's negligence claim. Thus, we see a significant benefit in compelling Defendant to redact and produce the resident's medical records. Conversely, the burden of redacting one (1) single individual's records is slight. Defendant contends that redacting the records would take "hours of time from a legal professional." (Doc. No. 16 ¶ 6). Weighed against the likely value of the information contained in the medical records, we do not consider this an undue burden.

Turning from the medical records to the incident report, Defendant objects to producing the report on grounds of attorney-client privilege, attorney work product, and peer review privilege. (Doc. No. 16 ¶ 7). However, Defendant offers no support for its position other than a conclusory statement that "the incident report [is] used internally to improve the quality of services provided by reducing morbidity and mortality rates" and "is prepared in anticipation of litigation." (Doc. No. 16 ¶ 8). We cannot make an informed decision as to the discoverability of the Defendant's incident report without seeing the report itself. Therefore, Defendant shall provide the report to the Court for *in camera* inspection. See Ellison v. Women & Children's Hosp. of Buffalo, C.A. No. 08-313, 2010 WL 5139030, at *2 (W.D. Pa. Dec. 10, 2010) (reviewing document *in camera* before deciding question of peer review privilege). In its submission, Defendant shall state with particularity the basis for its attorney-client privilege, attorney work product, and peer review privilege objections to producing the report. See Corrigan v. Methodist Hosp., 857 F. Supp. 434, 436 (E.D. Pa. 1994) (recognizing that "[i]t is axiomatic that the party objecting to discovery on the basis of privilege has the burden of

5

establishing the existence of that privilege.").

To summarize, Defendant shall produce its medical records for the non-party resident involved in Plaintiff's September 12, 2009 incident, with all personal and identifying information redacted as specified in 45 C.F.R § 164.514(b)(2)(i), no later than March 19, 2012. By that same date, Defendant shall submit its incident report for the aforementioned altercation to the Court for *in camera* review. Any arguments Defendant wishes to present with respect to attorney-client privilege, work product, and peer review privilege must accompany the incident report. After reviewing the report, we will rule on its discoverability by written order.

BY THE COURT:

/s/ Legrome D. Davis

Legrome D. Davis, J.